GEORGE *v.* SMILANSKY.

1. VENDOR AND PURCHASER—LAND CONTRACT NOT VOID BECAUSE NOT EXECUTED IN DUPLICATE AS AGREED.

 Although it was agreed between vendors and vendees that a land contract should be executed in duplicate and both parties have a copy, it would not be void because the vendees never received their copy, if in fact it was properly executed in writing, since the copy is simply evidence of the contract.

2. SAME—FORECLOSURE OF LAND CONTRACT—DEFAULT IN PAYMENT NOT EXCUSABLE.

 In a suit for the foreclosure of a land contract, vendees' defense that their default in making payment was due to their uncertainty as to whether the contract had been fully executed, and because they had never received their duplicate copy thereof, and therefore their default should be excused, *held,* without merit, in view of undisputed testimony that one of the vendees promised that a payment to become due under the contract would be made, although a little late, and that one installment of interest due thereunder was paid.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted January 21, 1927. (Docket No. 67.) Decided June 6, 1927.

 Bill by Edwin S. George and another against Louis Smilansky and another for the foreclosure of a land contract. From a decree for plaintiffs, defendants appeal. Affirmed.

*Clark, Emmons, Bryant & Klein (James J. Ferris,* of counsel), for plaintiffs.

*Percy W. Grose, Howard H. Colby* and *Bernard P. Costello,* for defendants.

---

[1]Vendor and Purchaser, 39 Cyc. p. 1230 (Anno); [2]Id., 39 Cyc. p. 1870.

BIRD, J.     In 1922 plaintiffs were the owners of lot 3 and the southerly 23.03 feet of lot 2 of Winder's subdivision of park lots 6 and 7, in the city of Detroit, subject to a mortgage of $100,000.     In October of that year they sold it to defendants on contract for $450,000, payable $75,000 on the execution of the contract, and $75,000 yearly until paid.     The initial payment of $75,000 was paid and defendants went into possession of the property.     Default was made in the payments stipulated in the contract and plaintiffs commenced foreclosure proceedings.     Defendants entered appearance but filed no answer.     During the pendency of these proceedings the parties negotiated a new contract on November 5, 1924.     There is some dispute as to the exact date on which it was executed, but no dispute as to the fact of execution. The new contract provided for a mortgage of $250,000 to the Detroit Trust Company, as trustee; payment of $125,000 to plaintiffs, payable $25,000 December 1, 1924, and $25,000 every six months thereafter until paid.

There were also arrears of interest which were to be paid.     This contract was also defaulted by failure to make payments, and this suit was filed July 1, 1925, to foreclose the second contract.     The principal defense raised by the answer appears to be that defendants were uncertain as to whether the second contract had been fully executed and because they had never received their duplicate copy of the contract. The matter went to a hearing and the chancellor found that the second contract was executed and in force; that the contract being executed in duplicate conveyed at least the idea that defendants were to have a copy, but that they had taken no steps in the meantime to rescind the contract for that reason, and, therefore, they were bound by it.     He found defendants in default in making their payments and foreclosed the

contract and gave defendants 40 days to make payment of the amounts then due, and found the several amounts due. There is no variance between the parties on the question of figures, so it will be unnecessary to discuss them.

We think the testimony fully supports these findings and we are in accord with them. If the contract were in writing and were executed in duplicate, it was the contract between the parties, even though neither had a copy. The copy was simply evidence of the contract. It is probably true, however, as the chancellor observed, that the defendants should have had a copy. The oversight in this respect was doubtless caused by the leaving of Mr. George and Mr. Emmons, who had charge of the matter, for a foreign hunting trip. They were gone several months. But, be that as it may, the excuse given by defendants for a default in the performance of a contract of this magnitude seems rather inadequate, especially in view of the following talk Mr. George had with Mr. Smilansky just before leaving on his trip:

"I took a trip to Africa in December, 1924, and prior to that time I had talked with Mr. Smilansky— I should say it was about the latter part of November before I left on my trip. I talked with him over the 'phone.

"Q. What conversation took place between you at that time?

"A. I asked Mr. Smilansky whether I could be sure of the payment according to the new contract which we had entered into and which was due on the 1st of December. He said to me then he didn't think he could make the payment of $25,000 on the first of December, and I said to him it was highly important to me to know whether I could depend upon the payment being made as provided for in the new contract, which contract had been made—the terms had been arranged to suit his own convenience, at his suggestion. I wanted to be sure I could depend on it because I was going away and I also had obligations

to meet.    Mr. Smilansky said to me, in words to this effect:    I could depend on this payment being made, and I said:    'When, if you can't pay it December 1st?' And he said that it would be paid before Christmas time.    I said:    'Absolutely sure?'—or words to that effect, and he said:    'If not by Christmas time, certainly by the first of the year.' "

This conversation does not appear to be denied. Besides this, defendants paid the first installment of interest on the $250,000 mortgage which had been given to the Detroit Trust Company in pursuance of the second contract.    These incidents do not indicate that defendants were in serious doubt whether the new contract was in force.

The chancellor reached a very just conclusion, and the decree will be affirmed.    Defendants will, however, have 40 days from the date of the filing of this opinion to comply with the terms of the decree.    Plaintiffs will recover their costs of this court.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.    CLARK, J., did not sit.